Good morning, Your Honors. May it please the Court, Derek Toboney on behalf of the appellants. This is not an immigration case. This is a much more exciting tax case. Yeah, we've got a morning. You've had all the immigration cases this morning. This is a situation where in a two-step process the government obtained first a judgment against Mr. Wheeler for income taxes due and then a second summary adjudication that it could pursue an asset which was not in his name but in the name of trust. To do that, to reach into somebody else's pocket, to take an asset out and use that to satisfy a federal tax... The question is whether or not the holder is a nominee, right? Well, and the interesting thing about that is that this Court in deciding U.S. v. Stonehill said there was a two-step process for an interest in a property which may be attached by the government. The first is you look under state law to determine whether or not there's an interest at all and what the nature of that interest is. And the second step is then to go see whether or not the federal tax law allows attachment of that interest in sale for the execution of the tax lien. The district court didn't do that. It jumped that completely and went straight to the nominee issue, apparently holding that if it's a nominee argument, you don't have to go under Stonehill. And I didn't read Stonehill as saying you do the two-step analysis except where the government argues a nominee. Now, what a nominee is, or an alter ego, because they're kind of used interchangeably by several of the cases, is really a situation where, and I'll use a visual analogy, where A is the holder of the title and B is the person holding the strings of A, the puppet, the marionette. And that's what you're looking for. You're really looking to see whether A is real or not and whether B is holding the strings and controlling everything that A does with respect to the property. I still think that the government or the law requires that you do that analysis under state law first. Now, the government argued in its brief was two things. One, that there's no real distinction because whether it's under state law or federal law, the decision is going to be the same. And then also stated that California doesn't have a bright-line test for nominee or alter ego status. I disagree. In fact, California does have a bright-line law about when you can go and seize property that's held in the title or name of another person, and that's the Fraudulent Conveyances Act. I think it's actually called the Uniform Fraudulent Conveyances Act. It's at 3439, SEC of the Civil Code, and it has a couple of bright-line requirements. You can take an asset which belongs or is held in the name of another person if the transfer was done with the actual intent to defraud creditors or the transfer is done in such a way that it's for less than equivalent value and it renders the transferor, or in this case the defendant, unable to pay his bills. The government didn't attempt to meet either one of those tests, and probably because there's a seven-year statute of limitations on fraudulent transfers under the Act. And the first assessment was long after, more than seven years after the trust acquired the property. And what happened here is... I'm sorry, go ahead. Okay. What happened here was the trust was set up years before. The property was purchased in the name of the trust. It was purchased with trust assets. This was all shown through the evidence. The GU trust had a trading account with a brokerage. The money came from the brokerage account. It went into the escrow. The trust that turned out with the property, that's the city holding trust, or CHT, signed the escrow instructions. At the end of it, it took title after going through Mr. Wheeler for less than one day because of a title insurance problem. It was purchased from a real person with real money. It was for value. It was a fair market purchase. There was a down payment and there was a real loan secured by the property and paid off over a series of years. But where did the money come from to pay off the property? And to pay the property taxes on the property. GU paid everything. Everything came out of the GU trust. And where did the money come that went into the GU trust? GU had a trading account at a brokerage, and maybe some of the money came from Mr. Wheeler. It was never established where all of its money came from. It had its own money. Well, it has to get it from somewhere. It's created. So what money comes in to create the trading account? The record does not indicate how GU was funded. GU was not a defendant in the action. So are you still challenging the fact that Wheeler had no income during, I guess, since 1991 when he stopped filing income taxes? Well, the argument is a little more technical than that. The argument is that on summary judgment, the government failed to make an adequate showing that there was a proper assessment. And that's not based upon whether or not there's a showing of income. It's whether or not there's an adequate showing of income for every year for which they sought an assessment. They sought an assessment for 12 years. Some years they produced no information whatsoever as to income. Other years they produced bare 1099s. A 1099 has to be predicated upon a W-9 form, which is a statement signed by the taxpayer. But they also submitted a tremendous amount of evidence documenting defendants' receipt of unreported income for each of those years. And I think there was some adjustment for that aspect, which they couldn't prove. I don't know that there was an adjustment. So when I added up the figures, over the years the government indicated Mr. Wheeler made about $1.1 million and got a judgment for $1.2 million in taxes, which seemed a little strange to me, but that's how they worked out the numbers. Well, of course, he's got substantial penalties and interest. The penalties don't really stop at 25 percent. The penalty might be an interest on top of that, but the penalties for nonpayment stop at 25 percent. But interest can add up on a substantial amount of money. You still wouldn't think over a 10-year period it would be more than the income earned, that the taxes, even with penalties of interest, could be more than the income earned. But that's what actually was granted to them. And, again, I think the government may have the better argument at trial, but I think there were issues as to whether or not the 1099s were fraudulent, whether they were accurate. There was a question as to whether or not the money that was reported as being paid to Mr. Wheeler was paid because of income or because he had a trading account of his own, and it was securities trading, which may or may not be subject to tax. Right, but you can't – okay, you have to have the money from somewhere to create a trading account where you use your money to trade. Remember, up until – The money has to come from somewhere, whether you have an account or not an account. As the government conceded, Mr. Wheeler, up until 1991, filed returns and paid taxes. Right, he did. And then all of a sudden, in 1991, he decided he didn't have to. And, you know, he may pay the penalty for that. There's two issues here, is whether or not he actually – what he earned after that or what he took in after that really was income, which I said, the government may have the better argument ultimately. I don't think they've made a sufficient showing for summary judgment, but they may have the better argument at trial. But the second issue is whether or not, having assessed Mr. Wheeler for tax, they can go out and get an asset which is in a trust for – an irrevocable trust for his children. Now, California has a bright-line test not only for fraudulent conveyances. There's a bright-line test for whether or not you can pierce an irrevocable trust. That's Probate Code 15-400. Under 15-400, once property is in an irrevocable trust, even if there's a fraudulent disbursement from the trust, which there hasn't been – And what was the date on which this trust was set up? It's in my brief. I don't remember it off the top of my head. I believe it was about 1993. So a couple of years after he quit paying taxes. I don't think – maybe one year after he quit paying taxes, but before – long before there was any assessment, years before any assessment. In no case that I've seen that the government cited has ever found a nominee status based upon a transfer to avoid taxes where there wasn't an imminent or already existing tax link. Here there was nothing. The next link was years later. So you're saying that the issue of whether a person or an entity is a nominee is going to vary from – for purposes of the government exercising its rights to collect taxes is going to vary from State to State based upon State fraudulent conveyance law? I think that's your holding in Stonehill. I could be wrong, but I think that's actually what your holding in Stonehill is, is that you have to start with State law. And it is going to make a difference because in some states, trusts are pierceable and in some states it's much more difficult to get through. The other thing I wanted to do this morning briefly was the government really relies upon the factors in the U.S. v. Bell case to determine whether or not an asset is being held as by a nominee or for a nominee. And I looked at the actual findings of fact or the statement of undisputed fact that the government submitted. The defendant in that case didn't object or argue any of them. There's 23 different findings of fact which are actually stated in the opinion. And they include everything including the fact that just prior to the levy, the Bells actually claimed this property was theirs in pleadings they filed with the bankruptcy court. They got a homeowner's exemption on the property. They signed a stipulation indicating it was theirs. Here is something different. Here Mr. Wheeler sets up a trust for the benefit of his children. It has a real trustee. It is a real and irrevocable trust. It is stated repeatedly it's irrevocable. Neither of the trusts are California trusts which is the only state that I know of that says if you have a voluntary trust it's revocable unless you say otherwise. There are real decisions from the trustee. There's a real paper trail of everything the trustee does and all the decisions that are made. Query. If Mr. Wheeler had set this up as a separate corporation and transferred the shares to his children, could the government go in and get the property? The answer is I don't think so. The fact that you have control doesn't mean we'd have a different situation too. He didn't set it up as a corporation. He set it up as a trust. It's supposed to be stronger. It's easier to get through a corporate veil than it is to get through an irrevocable trust veil. The whole reason for setting up a trust is that this is for my children. Once it goes into the trust, it's there for good. It's theirs. It can't be gotten to. That's the whole reason for an irrevocable trust. And Mr. Wheeler is not the only person on the planet or in this country to set up an irrevocable trust to protect his children from his problems. That may be why he did this. But he did it. The money went in years before. It all came out of the trust. It all went through an irrevocable trust. I don't think the government can reach into the trust and take the children's money, which is what they're doing. Mr. Wheeler couldn't do it. Mr. Wheeler would be liable to the trust and to his children if he tried to violate the trust. And, in fact, there's no indication he ever did. He never tried to borrow against the property. But he lived in the house. So did the children. I know, but what I'm saying is everybody, and they used the trust asset as if it was his own trust asset. No, he used it as if it was the children's asset, and for years he actually made payments to the trust. And how old were the children when they allowed their father to live with them? They're minors. They're minors still. Right. Well, but would he not live in the house with his children? Of course he would, but that also goes to why there isn't, why you can pierce this. You can only pierce this, and I may find out that I'm wrong from your opinion, but you may only pierce this if you find out that it's a fictitious arrangement that he really has. It's really his property, and it's just this whole thing with his children is just a fiction. Other than the fact that it's real and the fact that the government doesn't like the outcome, which is they can't reach the property, doesn't mean that the transfer and the trust and the whole arrangement was any less real. These trusts are 15 years old. It might have been a different thing if your client had actually paid taxes on his income while he was putting all that money into the trust. I mean, I do know of situations where people who do pay their taxes on their income actually purchase homes in the name of their children, and then they'll go live in them and pay nominal rent. That's a way to get around certain tax laws. I've seen that. That's not the situation here. I don't know whether or where the money came from the way into the GU trust. Because he denies having any income. No, the GU, it may have come off from Wheeler, but I don't know that, and there's nothing in the record indicating that because, again, the GU trust was never a defendant in this case. What we know is that the money, in fact, for the purchase of this house did not come from Mr. Wheeler. It came from a trading account at a brokerage. All right. Well, we've gone over that, so your time is up. Thank you. Thank you. May it please the Court, I'm Patricia Bowman appearing on behalf of the government. The government has the right to go under state fraudulent conveyance laws, but it doesn't have only that right. It also has the right to pursue a nominee theory, and California has recognized the right of the federal government  and described it as the right to determine who's the bona fide owner of the property. The nominee theory looks to when a taxpayer places the property in the hands of somebody else but continues to enjoy and control the property. So one of the first main considerations that the courts look to is the lack of consideration, because if the person holding the property didn't pay for it, it tends to indicate that it's a nominee. And the summary judgment record is absolutely clear that the trust, the city holding trust, did not pay for the property. The first transaction was intended to be structured as if the money was flowing from the GU trust to the city holding trust to pay for the property, but the title company refused to cooperate with that being reflected on any of the paperwork, so it had to be redone. And the taxpayers actually, the taxpayer bought the property on December the 3rd of 1993. December the 13th, I'm sorry, December the 13th of 1993. On December the 16th, he and his wife, acting for the trust, made the decision to place the property into the hands of the trust, and then the transaction to the trust happened on December the 17th. And the deed on December the 13th reflects consideration, and the deed on December the 17th doesn't reflect consideration, and the taxpayer admitted that CHT didn't pay him anything for the property. So there was no payment from the trust to the taxpayer, who bought the property from the Knowles on the 13th. And the other major consideration that tends to indicate the nominee's status in this case is the looming tax liabilities. The first set of trusts were set up in late April of 1993 when the taxpayer had decided he'd paid his taxes until 1992 when he decided he wasn't going to pay anymore and hasn't paid since. So he set up the trust and then transferred the trust to a second trust, indicating he wanted to protect his assets more strongly, so the second trust was created to further insulate the assets from his potential liability of any creditors. And when you're using a trust to protect your assets from creditors, it tends to indicate that the nominee theory. And then when the government tried to serve summons on him and filed this complaint against him, then he started moving his money out of the trust so that the IRS couldn't reach it, and he says in his brief on reply in his court, he wanted to try to protect his property from the overreachings of the IRS. Well, he hasn't paid taxes since 1992. He owes well over a million dollars, and trying to protect your assets from the IRS indicates that you're using a nominee theory. I mean, you're using an alter ego, not an alter ego, a nominee to hold your property. And the fact is that he lives on the property. He lives there, he enjoys it, he has control of it, he's done home improvements, put in a swimming pool, remodeled his kitchen, and so I think the summary judgment record is really strong that you can't structure a deal where you place your home in a trust, you stop paying your taxes, but then you pay the mortgage, the property taxes, the utilities, which are amounts you would have to pay in any event, and then you try to claim, well, that somehow legitimizes it, because, I mean, that's just the way to tax abuse. Is he taking actions such as those that were taken in bail? Well, I'm skeptical, highly skeptical of what he did here. But there are some distinctions between this case and the Bell case for purposes of the summary judgment record in terms of some aspects of exercising ownership, such as declaring a homestead exemption. I'm sorry. Declaring a homestead exemption for the property, representing that it is, in fact, your property. Right. Did he do any of that? Well, he has the contract right according to the trust to treat the property as if it's his own. For what purposes? All purposes. I mean, that's the trust agreement provides him that right. The first trust agreement specifically said he could transfer it, sell it, do anything and everything to the property. And then the second time when it was redone, it said he could treat it as if he were the owner. And then the evidentiary foundation for the government's assessments are really, really strong in this case. You know, the government's assessments are entitled to a presumption as long as there's some kind of evidentiary foundation when it's unreported income. So the government has an obligation to show that there's some foundation of supporting that there's unreported income. And then in this case, we submitted the contract that he had with his brokerage firm that he would be paid commissions for sales. And we have 1099s. 1099s are certainly an evidentiary foundation to support summary judgment on a right to reduce assessments to judgment. And we also have his admission that he received checks in the amount reported by his brokerage firm for a few years, just two or three years where he agreed that he received that amount from the brokerage firm. And also, you know, we have his statement in his brief on appeal where he said that during the relevant years he was a broker. Well, to admit that you were engaged in an income-producing activity is evidentiary support for our tax assessments. Are there no further questions? Thank you. Thank you.
judges: Lynn, Wardlaw, Fletcher W.